FILED

Robert D. Stearns, Plaintiff in Propria Persona
269 Wealthy Road
Linden, Virginia 22642

## UNITED STATES DISTRICT COURT

2016 NOV -4 P 1: 47

## DISTRICT OF VIRGINIA

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ROBERT D. STEARNS

    PLAINTIFF

v.

CASE NO. 1 : 16 CV 1399

SHELLPOINT MORTGAGE SERVICING AND
THE BANK OF NEW YORK MELLON FKA THE
BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-OAS,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-OA8 ("BONY")

    DEFENDANTS

_____/

## COUNT I – COMPLAINT FOR VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA); 15 U.S.C. § 1692 ET SEQ.

Come now the plaintiff Robert D. Stearns and sues the defendant SHELLPOINT MORTGAGE SERVICING for penalties and actual damages for unfair and deceptive collection practices in violation of the Fair Debt Collection Practices Act, and for other relief as set forth herein.

### JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

Defendant is a debt collector as defined under Title 15 U.S.C. §1692(a). of the Fair Debt Collection Practices Act.

Defendant has undertaken actions that involve the collection of a consumer debt against the plaintiff. The debt collection involves a purported debt for personal, family or household purposes. Defendant is a debt collector as defined under Title 15 U.S.C.

§1692(a)(6) and is not excluded by any provision of what defines a "debt collector" under this statute.

## VENUE

The plaintiff has resided in Warren County, Virginia, at the address known as 269 Wealthy Road, Linden, Virginia, for all times material to this complaint.

The defendant is a corporation doing business in the State of Virginia with its principle place of business at the address of 55 Beattie Place, Suite 110, Greenville, SC 29601, for all times material to this complaint.

## PLAIN STATEMENT

This is a complaint for unfair and deceptive collection practices involving collateral against which the defendants have falsely asserted various rights or claims.

The subject property that has given rise to this complaint is known as a trust deed, and rights thereunder, and land with fixtures on the land that is encumbered by a trust deed recorded in Warren County, Virginia, a true and correct copy of which is attached.

Plaintiff entered into a collateral agreement known as a mortgage involving his property as described herein. This obligation was incurred as a financial obligation that was primarily for family, personal or household purposes. This mortgage did not name or confer any power upon the defendants

At some time after this mortgage was recorded, the defendant began attempting to foreclose under the terms of the mortgage, as if it were the holder or in control of the note and mortgage.

The plaintiff is the mortgagor in a trust deed that was recorded on the date of January 16th 2007, in Warren County, Virginia, in the amount of $650,000.  The deed secured the payment of a promissory note made payable to AEGIS MORTGAGE SERVICING, the lender stated on the trust deed.  The trustee is listed as MICHAEL E. MILCHAK.

There were  no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

The plaintiff sent the defendant a notice of dispute and request for validation after

receiving a notice of default dated May 18th 2016.

The plaintiff sent a request to the lender and trustee on or about June 7th 2016 requesting verification that the named defendant was transferred, assigned or conveyed the rights under the trust deed and note. No response has been given as of this date. A true and correct copy is included with Exhibit A.

The defendant has somehow acquired the personal and banking information of each of the plaintiff and has used that information for their own personal gain and benefit without any permissible purpose.

The plaintiff received copies of what purport to be an assignment of the note and trust deed for his home and a notice of substitute trustee.

It appears that a company named "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC." DBA "MERS" assigned the note and trust deed to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OAS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA8 ("BONY").

The assignment appears to have been executed by "Miguel Romero" with the title of "Assistant Secretary" to "MERS" on the date of June 22nd 2011; however, MERS has no employees and this is a matter of public record. It has already been discovered that MERS is a tax evasion scheme set up by the banks to evade county and state taxes and launder money in the form of negotiable instruments.

Additionally, this other defendant, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OAS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA8 ("BONY"), appointed a substitute trustee by the name of "EQUITY TRUSTEES, LLC" on the date of November 7th 2013. This substitution was executed by "Whitney E. Eckert" with the title of "Assistant Vice President" for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OAS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA8 ("BONY").

However, this party does not exist in any known system of records and has no employees.

## ALLEGATIONS

Each and everyone of the foregoing statements, together with the exhibits, are re-alleged herein and included with the following additional allegations.

Within the previous twelve months, the defendant began sending written communication to the plaintiff stating that it was representing various parties having rights under the same trust deed, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiff's property.

Plaintiff asked the defendant to provide verification that these parties it was supposed to have been representing, whose names it was using, or who were aware of its actions. No response was given.

The plaintiff explained that the reason for these requests were, in part, because none of these parties were named in the mortgage referenced by this defendant.

The defendant sent written communication to the plaintiff stating that it was representing various parties, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiff's property.

Plaintiff asked the defendant to provide verification that these parties she was supposed to have been representing, whose names she was using, were aware of her actions.

The plaintiff explained that the reason for these requests were, in part, because none of these parties were named in the mortgage referenced by this defendant.

Plaintiff also asked the defendant to explain how it obtained the personal and private banking, financial and identifying information of the plaintiffs. The defendant failed or refused to answer these questions, in spite of being advised that she was in violation of the Fair Debt Collection Practices Act and may be subject to penalties and actual damages for continuing to undertake these actions.

The purported debt is not a debt held or collected under the name of the defendant.

The defendant made false representations that it was the holder of a note or promise to pay in which the plaintiff owed the defendant.

The defendant made false representations that it had rights to foreclose against the plaintiff's property (home) under the provisions of a trust deed that is recorded against the title of the plaintiff's property in the county where the property is situated.

The defendant is utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiff's promissory note.

First, the defendant acquired a copy, forged or counterfeit version of the plaintiff's promissory note. The actual steps taken are unclear at this time but there was no valuable consideration given in the process and the original lender or originator either no longer exists or has no records of this instrument.

Second, the defendant is and has been employing a complex scheme, including what has become known recently as "securitization", and then assignments, trusteeships and other counter parties or affiliates such as "serving agents" to obscure who initially received the money.

Finally, the parties involved have been compensated in a list of different ways from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and attorneys and clerks of the court. And all of these steps have been undertaken in a very complex, obscure and indirect way so as to conceal who did what and when.

The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies.

The defendant did not have the typical credit information of the plaintiff, such as a social security number, or date of birth or other banking information that a creditor would normally be expected to have already obtained before a debt obligation was established.

The defendant has used a false or fictitious name in the undertaking of its collection actions.

The defendant has used a name other than the true name of its business, company or organization.

After several written requests, the defendant has refused to identify its owners, principals or interests it claims to have in the plaintiff's property. Instead of making these disclosures, defendant has falsely represented that it does have certain legal rights under the trust deed and that it has the right to foreclose of the plaintiff fails or refuses to provide more credit, banking, financial, personal and other identifying information along with agreeing to making regular payments of money to the defendant or its privies.

The defendant failed or refused to provide an accounting of its claim showing any unpaid balance and instead simply demanded money in exchange for not foreclosing and has only provided copies of records that anyone could obtain from the county recorders' office.

The defendant has falsely represented the name of the creditor to whom it alleges the debt is owed.

The defendant has threatened to undertake a foreclosure action against the plaintiff when it has no such rights to do so.

The defendant falsely represented that if the plaintiff failed or refused to cooperate by providing financial, banking, credit, personal and other identifying information along with money, that it would sell the plaintiff's property at a public auction. The correspondences sent by the defendant expressed this message while it may not have been written in these words, the plaintiff understood that this was the message, and these correspondences are included with Exhibit A.

The defendant delivered to the plaintiff written communications that, were made to look like or, falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval.

The Defendant failed to provide the Plaintiff with validation of debt within five business days of contacting him.

Based on these allegations, the consumer alleged violations of §§ 1692e(4) and (5), and 1692g(a) and (b) of the FDCPA.

The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

This is an action for damages exceeding $75,000.

Plaintiff demand a jury trial.

As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs, if any, pursuant to 15 U.S.C. § 1692k(a)(3) from each and every defendant, jointly and severally.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be entered against each Defendant, jointly and severally, and Plaintiff be awarded damages from each Defendant, as follows:

A.  An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

B.  An award of costs of litigation and reasonable attorney's fees, if any, pursuant to 15 U.S.C. § 1692k(a)(3);

C.  An award of actual damages;

D.  Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all issues so triable as a matter of law.

## COUNT II – COMPLAINT FOR VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA); 15 U.S.C. § 1692 ET SEQ.

Come now the plaintiff Robert D. Stearns and sues the defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OAS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA8 ("BONY") for penalties and actual damages for unfair and deceptive collection practices in violation of the Fair Debt Collection Practices Act, and for other relief as set forth herein.

## JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

Defendant is a debt collector as defined under Title 15 U.S.C. §1692(a). of the Fair Debt Collection Practices Act.

Defendant has undertaken actions that involve the collection of a consumer debt against the plaintiff. The debt collection involves a purported debt for personal, family or household purposes. Defendant is a debt collector as defined under Title 15 U.S.C. §1692(a)(6) and is not excluded by any provision of what defines a "debt collector" under this statute.

## VENUE

The plaintiff has resided in Warren County, Virginia, at the address known as 269 Wealthy Road, Linden, Virginia, for all times material to this complaint.

The defendant is a non-resident collection of certificates or an unintelligible mixture of what appears to be names of banking organizations, trusts and certificates, and is apparently doing business in the State of Virginia with its principle place of business at the address of 101 Barclay St. 8W, New York, NY 10286, for all times material to this complaint. This defendant does not appear to exist in any system of records within the State of Virginia.

## PLAIN STATEMENT

This is a complaint for unfair and deceptive collection practices involving

collateral against which the defendants have falsely asserted various rights or claims.

The subject property that has given rise to this complaint is known as a trust deed, and rights thereunder, and land with fixtures on the land that is encumbered by a trust deed recorded in Warren County, Virginia, a true and correct copy of which is attached.

Plaintiff entered into a collateral agreement known as a mortgage involving his property as described herein. This obligation was incurred as a financial obligation that was primarily for family, personal or household purposes. This mortgage did not name or confer any power upon the defendants

At some time after this mortgage was recorded, the defendant began attempting to foreclose under the terms of the mortgage, as if it were the holder or in control of the note and mortgage.

The plaintiff is the mortgagor in a trust deed that was recorded on the date of January 16th 2007, in Warren County, Virginia, in the amount of $650,000. The deed secured the payment of a promissory note made payable to AEGIS MORTGAGE SERVICING, the lender stated on the trust deed. The trustee is listed as MICHAEL E. MILCHAK.

There were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

The plaintiff sent a request to the lender and trustee on or about June 7th 2016 requesting verification that the named defendant was transferred, assigned or conveyed the rights under the trust deed and note. No response has been given as of this date. A true and correct copy is included with Exhibit A.

The defendant has somehow acquired the personal and banking information of each of the plaintiff and has used that information for their own personal gain and benefit without any permissible purpose.

The plaintiff sent the defendant a notice of dispute and request for validation after receiving a notice of default dated January 7th, 2016.

Plaintiff received a notice and demand dated March 4th 2016 from the defendant's agent in which it stated that the defendant was the new owner of the note

and trust deed described herein. This notice is included with Exhibit A.

The notice demanded payment of $799,105.19 and threatened that if payment in full was not made within an indeterminate amount of time, that the the defendant and its agent Shellpoint would sell the plaintiff's property at a foreclosure auction.

The plaintiff received copies of what purport to be an assignment of the note and trust deed for his home and a notice of substitute trustee.

It appears that a company named "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC." DBA "MERS" assigned the note and trust deed to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OAS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA8 ("BONY").

The assignment appears to have been executed by "Miguel Romero" with the title of "Assistant Secretary" to "MERS" on the date of June 22nd 2011; however, MERS has no employees and this is a matter of public record.  It has already been discovered that MERS is a tax evasion scheme set up by the banks to evade county and state taxes and launder money in the form of negotiable instruments.

Additionally, this other defendant, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OAS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA8 ("BONY"), appointed a substitute trustee by the name of "EQUITY TRUSTEES, LLC" on the date of November 7th 2013. This substitution was executed by "Whitney E. Eckert" with the title of "Assistant Vice President" for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OAS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA8 ("BONY").

However, this party does not exist in any known system of records and has no employees.

### ALLEGATIONS

Each and everyone of the foregoing statements, together with the exhibits, are

re-alleged herein and included with the following additional allegations.

Within the previous twelve months, the defendant's agent began sending written communication to the plaintiff stating that it was representing various parties having rights under the same trust deed, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiff's property.

Plaintiff asked the defendant to provide verification that these parties it was supposed to have been representing, whose names it was using, or who were aware of its actions.  No response was given.

Defendant's agent, Shellpoint, sent a communication to the plaintiff titled "Notice of Assignment of Deed of Trust" dated June 22nd 2011.  The purported assignment identifies the plaintiff's property against which there is a trust deed.  In the language of the assignment, it states that "for valuable consideration given", an organization by the name of Mortgage Electronic Registration Systems, Inc. (MERS), had acquired the rights under the trust deed.  The language did not state that MERS acquired any rights of the note which gave rise to the trust deed; however, the document further stated that MERS assigned the rights under the trust deed and the note to the defendant.  The notice of assignment was executed by an individual named Miguel Romero, as "Assistant Secretary" for MERS and was notarized in Ventura County, California.

The defendant was never assigned the note because it was never in the custody or control of the purported assignor, MERS.

Miguel Romero and the purported mortgage and note were never at the same location for the purported assignment, Romero signs these documents for money and he is not employed by MERS.  This document is false and falsely represents the facts claims therein.

There is no evidence anywhere that the defendant was ever assigned the purported note and mortgage by the lender, AEGIS MORTGAGE CORPORATION.

The plaintiff explained that the reason for these requests were, in part, because none of these parties were named in the mortgage referenced by this defendant.

The defendant sent written communication to the plaintiff stating that it was representing various parties, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all

claiming some rights in the plaintiff's property.

Plaintiff asked the defendant to provide verification that these parties she was supposed to have been representing, whose names she was using, were aware of her actions.

The plaintiff explained that the reason for these requests were, in part, because none of these parties were named in the mortgage referenced by this defendant.

Plaintiff also asked the defendant to explain how it obtained the personal and private banking, financial and identifying information of the plaintiffs. The defendant failed or refused to answer these questions, in spite of being advised that she was in violation of the Fair Debt Collection Practices Act and may be subject to penalties and actual damages for continuing to undertake these actions.

The purported debt is not a debt held or collected under the name of the defendant.

The defendant made false representations that it was the holder of a note or promise to pay in which the plaintiff owed the defendant.

The defendant made false representations that it had rights to foreclose against the plaintiff's property (home) under the provisions of a trust deed that is recorded against the title of the plaintiff's property in the county where the property is situated.

The defendant is utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiff's promissory note.

First, the defendant acquired a copy, forged or counterfeit version of the plaintiff's promissory note. The actual steps taken are unclear at this time but there was no valuable consideration given in the process and the original lender or originator either no longer exists or has no records of this instrument.

Second, the defendant is and has been employing a complex scheme, including what has become known recently as "securitization", and then assignments, trusteeships and other counter parties or affiliates such as "serving agents" to obscure who initially received the money.

Finally, the parties involved have been compensated in a list of different ways

from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and attorneys and clerks of the court. And all of these steps have been undertaken in a very complex, obscure and indirect way so as to conceal who did what and when.

The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies.

The defendant did not have the typical credit information of the plaintiff, such as a social security number, or date of birth or other banking information that a creditor would normally be expected to have already obtained before a debt obligation was established.

The defendant has used a false or fictitious name in the undertaking of its collection actions.

The defendant has used a name other than the true name of its business, company or organization.

After several written requests, the defendant has refused to identify its owners, principals or interests it claims to have in the plaintiff's property. Instead of making these disclosures, defendant has falsely represented that it does have certain legal rights under the trust deed and that it has the right to foreclose of the plaintiff fails or refuses to provide more credit, banking, financial, personal and other identifying information along with agreeing to making regular payments of money to the defendant or its privies.

The defendant failed or refused to provide an accounting of its claim showing any unpaid balance and instead simply demanded money in exchange for not foreclosing and has only provided copies of records that anyone could obtain from the county recorders' office.

The defendant has falsely represented the name of the creditor to whom it alleges the debt is owed.

The defendant has threatened to undertake a foreclosure action against the plaintiff when it has no such rights to do so.

The defendant falsely represented that if the plaintiff failed or refused to cooperate by providing financial, banking, credit, personal and other identifying information along with money, that it would sell the plaintiff's property at a public auction.  The correspondences sent by the defendant expressed this message while it may not have been written in these words, the plaintiff understood that this was the message, and these correspondences are included with Exhibit A.

The defendant delivered to the plaintiff written communications that were made to look like or falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval.

The Defendant failed to provide the Plaintiff with validation of debt within five business days of contacting him.

Based on these allegations, the consumer alleged violations of §§ 1692e(4) and (5), and 1692g(a) and (b) of the FDCPA.

The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

This is an action for damages exceeding $75,000.

Plaintiff demand a jury trial.

As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs, if any, pursuant to 15 U.S.C. § 1692k(a)(3) from each and every defendant, jointly and severally.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be entered against each Defendant, jointly and severally, and Plaintiff be awarded damages from each

Defendant, as follows:

A. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

B. An award of costs of litigation and reasonable attorney's fees, if any, pursuant to 15 U.S.C. § 1692k(a)(3);

C. An award of actual damages;

D. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all issues so triable as a matter of law.

## COUNT III – COMPLAINT FOR CONVERSION

Comes now the plaintiff Robert D. Stearns and sues the defendant SHELLPOINT MORTGAGE SERVICING in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from the theft of the plaintiff's personal, financial, banking and identifying information, and alleges the following:

### JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

### VENUE

The plaintiff has resided in Warren County, Virginia, at the address known as 269 Wealthy Road, Linden, Virginia, for all times material to this complaint.

The defendant is a corporation doing business in the State of Virginia with its principle place of business at the address of 55 Beattie Place, Suite 110, Greenville, SC 29601, for all times material to this complaint.

### PLAIN STATEMENT

This cause of action is not concerned with a foreclosure but does arise from the process of the defendant's involvement in conduction a foreclosure against the

plaintiffs.

The plaintiff is the mortgagor in a trust deed that was recorded on the date of January 16th 2007, in Warren County, Virginia, in the amount of $650,000. The deed secured the payment of a promissory note made payable to AEGIS MORTGAGE SERVICING, the lender stated on the trust deed. The trustee is listed as MICHAEL E. MILCHAK.

This complaint concerns the defendant's actions and conduct whereby it acquired the plaintiff's private property which includes but is not limited to, credit records, financial information, banking information and other personal and private identifying information, known as the plaintiff's "likeness", without authority.

The defendant then used this information to make it appear as if it had some rights under the mortgage or trust deed and that it was was working with the lender in the trust deed, for the purpose of taking more of the plaintiff's property and money.

The defendant then proceeded to send written communications to the plaintiff stating that it now either had rights to foreclose under the trust deed or that it was working with other parties who had rights to foreclose, unless the plaintiff made more financial disclosures and modified payment arrangements to the defendant.

The defendant pretended to help the plaintiff and lead him into making more and more financial disclosures and then either discontinued the communication after it obtained what it wanted, or created a situation to make it appear as if the plaintiff did not qualify, but then never returned or certified the destruction of the records and information obtain about the plaintiff.

## STATEMENTS OF FACT AND DEFINITIONS

The term "identity theft" includes the act of stealing one's mail or looking through one's private home and/or commercial business trash. Sometimes the theft is undertaken by simply communicating with the victim, such as via mail, telephone and sometimes during service calls such as a plumber casing a house and then giving the information he discovers to a third party for money.

Sometimes identity thieves steal your wallet or purse, and sometimes they only take the information in your wallet or purse. They will also fraudulently pose as

potential landlords, tax collector, banking organizations, attorneys, prospective or current employers, or creditors to try to obtain your personal data under false pretenses. The methods of identity theft have become known by the new term "phishing".

The term "phishing" is defined as someone is tricked into giving up personal information, typically by sending out what looks like official communications from banks, credit unions, or credit card companies asking to confirm private information including personal identification numbers and other critical identifiers. Some go so far as to file a "change of address" form to divert your mail to a drop or Post Office Box address.

The most recent example comes from the expanding mortgage foreclosure segment of the fiance market; whereby, individuals gather together public records such as mortgages and create promissory notes and copy signatures from the mortgages to the notes and use those copies along with other records created by software, to commission attorneys to begin a foreclosure action.  The attorneys then contact a homeowner and tell him that his mortgage is in default, and usually claim some unknown third party to whom it's in default, and that to avoid foreclosure, he will have to provide financial disclosures for a "loan modification'.  Out of fear, the unsuspecting homeowner provides this information without any conditions, such as never being advised of the perpetrator's document retention policy or what the financial information will be used for.  Many organizations are able to obtain credit information about the homeowner simply by paying a membership fee to Equifax.  This information is then used to obtain more information.  In probably every case, this financial information is sold or traded to third parties and utilized in making false reports to the IRS, such as on Form 1099.

Identifying information also includes a person's name, telephone number, date of birth, mother's maiden name, driver's license number, state identification number, or any other piece of information that can identify a person.

## ALLEGATIONS

The plaintiff re-allege the foregoing and incorporate each statement herein.

Jurisdiction and venue are proper and this complaint is an action at law and is properly before this court.

Plaintiff's "private information", as the term is used in this complaint and accepted commonly in our modern community, includes but is not limited to the likeness of the plaintiff, and his personal identifying information, banking, financial and credit information, and any other personal information that is or can be used by the plaintiff for his own personal and professional benefits.

Plaintiff owned, possessed, enjoyed and had the exclusive right to keep his private information and records from third parties, and has a right to rely upon the third party to only request such information for legitimate and legal purposes. The plaintiff's private records include the information appearing on his birth certificate, tax records, banking records, financial records, notes and related instruments, financial and other personal information and information that identifies the plaintiff, such as his likeness, photographs, videos, and other records which have not been deliberately published to third parties.

Within the previous twelve months and continuing through the present day, the plaintiff were contacted by the defendant and solicited for information including but not limited to personal and private identifying information, and credit, banking and financial information. Plaintiff has reason to believe that the defendant is owned and operated by individuals that are using the name of the defendant to conduct this scheme to convert the plaintiffs' property for its own purposes.

The defendant is being used to conceal the identities of these owners and other interested parties. The defendant threatened the plaintiff with the taking their home and money unless they provided certain financial, personal, banking and identifying information to the defendant. Copies of these written communications are attached along with Exhibit A.

The defendant also made inquiries of the plaintiff credit report but did not have a permissible purpose or obtained authority to make any inquiry of the plaintiff's credit records.

The defendant obtained records from the public domain that pertain to the plaintiff's property and rights to his property, and then use these records to create additional records and convince the personnel working in the court system to participate in a public auction of the plaintiff's home.

The defendant has deliberately and willfully, falsely presented itself and impersonated itself to the plaintiff as another person to obtain the plaintiff's property for purposes not permitted by law or agreement.

The defendant had an affirmative duty to disclose the purposes for which it coerced plaintiff's banking, personal, financial and identifying information.

The defendant's actions were deliberate and willful and negligent and careless. The plaintiff was never provided with a disclosure of the defendant's document retention policy or an explanation of the purposes for which the plaintiff's private information would be used.

The plaintiff has never entered into any agreement or contract with the defendant.

Defendant converted the plaintiff's property and rights to property by one or more wrongful acts or dispositions of plaintiff's property rights.

The damages suffered by the plaintiff exceed $2,500,000.

The defendant has taken the property and rights to property of the plaintiff for its own personal use, profit and gain.

Defendant knowingly obtained or used the plaintiffs' property, with intent to, either temporarily or permanently deprive the plaintiff of a right to the property or a benefit from the property; or appropriate the property to the use of any person not entitled to the use of the property.

The plaintiff requested a copy of the defendant's document retention policy but this request was ignored.

The defendant intentionally and willfully violated the plaintiff's rights to privacy and to keep his private and personal records private.

The defendant engaged in communications with the plaintiff and deceived him into disclosing his private information. The defendant accomplished this by using the information already available to the defendant in the public domain to make it appear as if the defendant had some legal rights to obtain more of the plaintiff's private information, when the defendant did not have such rights.

After obtaining plaintiffs' private information, defendant used this information for its own financial gain and ulterior and undisclosed purposes, and for purposes not permitted by law or by the either plaintiff. The defendant has or intends to file claims with the Internal Revenue Service, such as Form 1099, using the plaintiff's identifying information.

The defendant has or intends to use the plaintiff's private information to sell or trade with third parties for the mutual benefit of these parties, exclusive of contrary to the interests of the plaintiff.

The defendant used this information to sell the plaintiffs' property at a public auction in order to further give the appearance that it was legal when it was not.

Since the date of December 12th 2015, and to the best of plaintiffs' knowledge, the defendant has been in possession of plaintiff's private information, and without the consent of the plaintiff and without legal authority.

## DAMAGES

The plaintiff has suffered damages as a direct and proximate result of the defendant's actions and failures to act.

The plaintiff has suffered the loss of the actual fair market value of his home because the defendant has been encumbering the plaintiff's property, before, during and following the foreclosure thereof. The damages include $2,500,000 together with costs and attorney fees.

WHEREFORE plaintiff demands judgment against the defendant in the aggregate amount of damages alleged in the complaint of $2,500,000 together with other relief this court deems appropriate.

## COUNT IV – COMPLAINT FOR CONVERSION

Comes now the plaintiff Robert D. Stearns and sues the defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OAS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA8 ("BONY") in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from the theft of the plaintiff's personal, financial, banking and

identifying information, and alleges the following:

## JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

## VENUE

The plaintiff has resided in Warren County, Virginia, at the address known as 269 Wealthy Road, Linden, Virginia, for all times material to this complaint.

The defendant is a non-resident collection of certificates or an unintelligible mixture of what appears to be names of banking organizations, trusts and certificates, and is apparently doing business in the State of Virginia with its principle place of business at the address of 101 Barclay St. 8W, New York, NY  10286, for all times material to this complaint.  This defendant does not appear to exist in any system of records within the State of Virginia.

## PLAIN STATEMENT

This cause of action is not concerned with a foreclosure but does arise from the process of the defendant's involvement in conduction a foreclosure against the plaintiffs.

The defendant has represented itself as the "servicer" of the following trust deed account.

The plaintiff is the mortgagor in a trust deed that was recorded on the date of January 16th 2007, in Warren County, Virginia, in the amount of $650,000.  The deed secured the payment of a promissory note made payable to AEGIS MORTGAGE SERVICING, the lender stated on the trust deed.  The trustee is listed as MICHAEL E. MILCHAK.

This complaint concerns the defendant's actions and conduct whereby it acquired the plaintiff's private property which includes but is not limited to, credit records, financial information, banking information and other personal and private

identifying information, known as the plaintiff's "likeness", without authority.

The defendant then used this information to make it appear as if it had some rights under the mortgage or trust deed and that it was was working with the lender in the trust deed, for the purpose of taking more of the plaintiff's property and money.

The defendant then proceeded to send written communications to the plaintiff stating that it now either had rights to foreclose under the trust deed or that it was working with other parties who had rights to foreclose, unless the plaintiff made more financial disclosures and modified payment arrangements to the defendant.

The defendant pretended to help the plaintiff and lead him into making more and more financial disclosures and then either discontinued the communication after it obtained what it wanted, or created a situation to make it appear as if the plaintiff did not qualify, but then never returned or certified the destruction of the records and information obtain about the plaintiff.

## STATEMENTS OF FACT AND DEFINITIONS

The term "identity theft" includes the act of stealing one's mail or looking through one's private home and/or commercial business trash. Sometimes the theft is undertaken by simply communicating with the victim, such as via mail, telephone and sometimes during service calls such as a plumber casing a house and then giving the information he discovers to a third party for money.

Sometimes identity thieves steal your wallet or purse, and sometimes they only take the information in your wallet or purse. They will also fraudulently pose as potential landlords, tax collector, banking organizations, attorneys, prospective or current employers, or creditors to try to obtain your personal data under false pretenses. The methods of identity theft have become known by the new term "phishing".

The term "phishing" is defined as someone is tricked into giving up personal information, typically by sending out what looks like official communications from banks, credit unions, or credit card companies asking to confirm private information including personal identification numbers and other critical identifiers. Some go so far as to file a "change of address" form to divert your mail to a drop or Post Office Box address.

The most recent example comes from the expanding mortgage foreclosure

segment of the fiance market; whereby, individuals gather together public records such as mortgages and create promissory notes and copy signatures from the mortgages to the notes and use those copies along with other records created by software, to commission attorneys to begin a foreclosure action.   The attorneys then contact a homeowner and tell him that his mortgage is in default, and usually claim some unknown third party to whom it's in default, and that to avoid foreclosure, he will have to provide financial disclosures for a "loan modification'.   Out of fear, the unsuspecting homeowner provides this information without any conditions, such as never being advised of the perpetrator's document retention policy or what the financial information will be used for.   Many organizations are able to obtain credit information about the homeowner simply by paying a membership fee to Equifax.   This information is then used to obtain more information.   In probably every case, this financial information is sold or traded to third parties and utilized in making false reports to the IRS, such as on Form 1099.

Identifying information also includes a person's name, telephone number, date of birth, mother's maiden name, driver's license number, state identification number, or any other piece of information that can identify a person.

## ALLEGATIONS

The plaintiff re-allege the foregoing and incorporate each statement herein.

Jurisdiction and venue are proper and this complaint is an action at law and is properly before this court.

Plaintiff's "private information", as the term is used in this complaint and accepted commonly in our modern community, includes but is not limited to the likeness of the plaintiff, and his personal identifying information, banking, financial and credit information, and any other personal information that is or can be used by the plaintiff for his own personal and professional benefits.

Plaintiff owned, possessed, enjoyed and had the exclusive right to keep his private information and records from third parties, and has a right to rely upon the third party to only request such information for legitimate and legal purposes.   The plaintiff's private records include the information appearing on his birth certificate, tax records, banking records, financial records, notes and related instruments, financial and other

personal information and information that identifies the plaintiff, such as his likeness, photographs, videos, and other records which have not been deliberately published to third parties.

Within the previous twelve months and continuing through the present day, the plaintiff were contacted by the defendant and solicited for information including but not limited to personal and private identifying information, and credit, banking and financial information. Plaintiff has reason to believe that the defendant is owned and operated by individuals that are using the name of the defendant to conduct this scheme to convert the plaintiffs' property for its own purposes.

The defendant is being used to conceal the identities of these owners and other interested parties. The defendant threatened the plaintiff with the taking their home and money unless they provided certain financial, personal, banking and identifying information to the defendant. Copies of these written communications are included with Exhibit A.

The defendant also made inquiries of the plaintiff credit report but did not have a permissible purpose or obtained authority to make any inquiry of the plaintiff's credit records.

The defendant obtained records from the public domain that pertain to the plaintiff's property and rights to his property, and then use these records to create additional records and convince the personnel working in the court system to participate in a public auction of the plaintiff's home.

The defendant has deliberately and willfully, falsely presented itself and impersonated itself to the plaintiff as another person to obtain the plaintiff's property for purposes not permitted by law or agreement.

The defendant had an affirmative duty to disclose the purposes for which it coerced plaintiff's banking, personal, financial and identifying information.

The defendant's actions were deliberate and willful and negligent and careless. The plaintiff was never provided with a disclosure of the defendant's document retention policy or an explanation of the purposes for which the plaintiff's private information would be used.

The plaintiff has never entered into any agreement or contract with the defendant.

Defendant converted the plaintiff's property and rights to property by one or more wrongful acts or dispositions of plaintiff's property rights.

The damages suffered by the plaintiff exceed $500,000.

The defendant has taken the property and rights to property of the plaintiff for its own personal use, profit and gain.

Defendant knowingly obtained or used the plaintiffs' property, with intent to, either temporarily or permanently deprive the plaintiff of a right to the property or a benefit from the property; or appropriate the property to the use of any person not entitled to the use of the property.

The plaintiff requested a copy of the defendant's document retention policy but this request was ignored.

The defendant intentionally and willfully violated the plaintiff's rights to privacy and to keep his private and personal records private.

The defendant engaged in communications with the plaintiff and deceived him into disclosing his private information. The defendant accomplished this by using the information already available to the defendant in the public domain to make it appear as if the defendant had some legal rights to obtain more of the plaintiff's private information, when the defendant did not have such rights.

After obtaining plaintiffs' private information, defendant used this information for its own financial gain and ulterior and undisclosed purposes, and for purposes not permitted by law or by the either plaintiff. The defendant has or intends to file claims with the Internal Revenue Service, such as Form 1099, using the plaintiff's identifying information.

The defendant has or intends to use the plaintiff's private information to sell or trade with third parties for the mutual benefit of these parties, exclusive of contrary to the interests of the plaintiff.

The defendant used this information to sell the plaintiffs' property at a public

auction in order to further give the appearance that it was legal when it was not.

Since the date of December 12th 2015, and to the best of plaintiffs' knowledge, the defendant has been in possession of plaintiff's private information, and without the consent of the plaintiff and without legal authority.

## DAMAGES

The plaintiff has suffered damages as a direct and proximate result of the defendant's actions and failures to act.

The plaintiff has suffered the loss of the actual fair market value of his home because the defendant has been encumbering the plaintiff's property, before, during and following the foreclosure thereof. The damages include $2,500,000 together with costs and attorney fees.

WHEREFORE plaintiff demands judgment against the defendant in the aggregate amount of damages alleged in the complaint of $2,500,000 together with other relief this court deems appropriate.

## COUNT V – COMPLAINT FOR BREACH OF CONTRACT
## AND LIQUIDATED DAMAGES

Comes now the plaintiff Robert D. Stearns and sues the defendant SHELLPOINT MORTGAGE SERVICING in the following legal action to protect a private civil right and to compel a civil remedy for liquidated damages resulting from the breach of a license agreement, and alleges the following:

## JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

## VENUE

The plaintiff has resided in Warren County, Virginia, at the address known as 269 Wealthy Road, Linden, Virginia, for all times material to this complaint.

The defendant is a corporation doing business in the State of Virginia with its principle place of business at the address of 55 Beattie Place, Suite 110, Greenville, SC 29601, for all times material to this complaint.

## PLAIN STATEMENT

The defendant entered into a license agreement with the plaintiff which included liquidated damages for any breach or material breach thereof.

The defendant has breached this agreement and the plaintiff has suffered damages thereby and now seeks a judgment against the defendant for these damages.

## STATEMENTS OF FACT AND DEFINITIONS AND ALLEGATIONS

The abbreviation "XBT" is defined in the agreement upon which this complaint is based.

The abbreviation "Au" is defined in the agreement upon which this complaint is based.

On or about the date of April 1st 2016, the defendant entered into a license agreement with the plaintiff for the use of plaintiff's identifying information, including credit file, bank accounts, financial information, tax records and other personal and identifying information such as video-graphic and audio recordings of the plaintiff, and other terms set forth in the agreement, a true and correct copy of which is attached.

The plaintiff alleges the terms and provisions of the exhibited agreement, identified as the "Data Retention Policy" and alleges and incorporates each statement therein into this complaint.

The defendant was given a period of time to notice the plaintiff of its intent to be excluded from the license terms, under which the defendant was obligated to purge its records and databases of any and all information pertaining to the plaintiff and/or provide a certificate of destruction of any records or information it could not return. These terms are more fully set forth in the attached Exhibit C "DATA RETENTION POLICY".

The defendant has failed to comply with the "opt-out" provisions that would have excluded itself from the obligations under the license agreement.

The defendant is currently in breach of the license agreement for using and benefiting from the plaintiff's identifying information as defined in the agreement.

The defendant is liable to the plaintiff for liquidated damages as set forth in the agreement.

As of this day, the defendant is liable to the plaintiff in the amount or equivalent of 2.46 ounces of gold (Au) per diem beginning on December 21st 2015, or its equivalent in Bitcoin (XBT).

WHEREFORE the plaintiff demands judgment for liquidated damages in the amount of 2.46 ounces of gold (Au) per diem beginning on December 21st 2015, or its equivalent in Bitcoin (XBT), plus court costs, attorney fees and for other relief as this court deems appropriate.

## COUNT VI – COMPLAINT FOR BREACH OF CONTRACT

## AND LIQUIDATED DAMAGES

Comes now the plaintiff Robert D. Stearns and sues the defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OAS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA8 ("BONY") in the following legal action to protect a private civil right and to compel a civil remedy for liquidated damages resulting from the breach of a license agreement, and alleges the following:

### JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

### VENUE

The plaintiff has resided in Warren County, Virginia, at the address known as 269 Wealthy Road, Linden, Virginia, for all times material to this complaint.

The defendant is a non-resident collection of certificates or an unintelligible

The defendant has failed to comply with the "opt-out" provisions that would have excluded itself from the obligations under the license agreement.

The defendant is currently in breach of the license agreement for using and benefiting from the plaintiff's identifying information as defined in the agreement.

The defendant is liable to the plaintiff for liquidated damages as set forth in the agreement.

As of this day, the defendant is liable to the plaintiff in the amount or equivalent of 2.46 ounces of gold (Au) per diem beginning on December 21st 2015, or its equivalent in Bitcoin (XBT).

WHEREFORE the plaintiff demands judgment for liquidated damages in the amount of 2.46 ounces of gold (Au) per diem beginning on December 21st 2015, or its equivalent in Bitcoin (XBT), plus court costs, attorney fees and for other relief as this court deems appropriate.

DATED this 4 day of November, 2016.

_____   Robert D. Stearns, Plaintiff